UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00768-MOC-DSC

| | | |
|---|---|---|
| **DANIEL JACOBS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **DAVID K. STEIN,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Rule 59 Motion for Reconsideration (#14). Pursuant to this court's prior Order (#20), a hearing was held on February 14, 2017. The matter has been fully briefed and is ripe for review. Having considered the Motion and reviewed the pleadings, the court enters the following Order.

**FINDINGS AND CONCLUSIONS**

**I.  Background**

Plaintiff alleged that defendant owes him money and has submitted an Amended Complaint with two counts. Plaintiff, a North Carolina resident, contends that defendant committed fraud and intentionally interfered with contractual relations. Pl. Amended Complaint (#6) at 6-7. Defendant contends that the allegations are "meritless" and should be dismissed without even reaching the merits as the defendant is not subject to personal jurisdiction in North Carolina. Def. Br. (#8) at 1.

The question before the court is whether the defendant has sufficient contact with the state as to allow the court to exercise personal jurisdiction over him. Defendant Stein was an officer and a significant shareholder in an Ohio company, Residential Finance Company ("RFC"). Pl. Amended Complaint (#6) at ¶ 3. It is undisputed that defendant traveled to North Carolina on at least two trips on behalf of RFC. Def. Br. (#8) at 2.

Defendant Stein filed a Motion to Dismiss under Rule 12(b)(2) in November 2016. After reviewing this Motion and plaintiff's responsive filings, the court issued an Order (#13) in January 2017 denying the Motion to Dismiss. In the instant Order, the court will vacate its earlier Order (#13) and substitute the analysis below.

## II. Applicable Standard

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence.

When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiffs' "to make a mere *prima facie* showing of jurisdiction to survive the

jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and must draw the most favorable inferences for the existence of jurisdiction. Id.; see also Thomas v. Centennial Commc'ns Corp., 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006).

In the end, plaintiffs must show that the exercise of personal jurisdiction over a defendant complies with the forum state's long-arm statute and the constitutional requirements of due process. Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012). Since North Carolina's long-arm statute extends jurisdiction to the outer limits of due process, the jurisdictional analysis merges into a single due process inquiry. Thomas, 2006 WL 6151153, at *2.

### A. General Jurisdiction

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the State that are so "continuous and

systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). The court cannot find sufficient allegations to establish general jurisdiction over this defendant.

### B. Specific Jurisdiction

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant where the cause of action arises out of defendant's activities in the forum state. In analyzing specific jurisdiction over a defendant, courts consider whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober, 686 F.3d at 1346 (citation omitted). Plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair. Id.

## III. Discussion

### A. General Effects of the Alleged Tort

As noted above, the plaintiff bears the burden for showing why specific jurisdiction is applicable in this case. To support his jurisdictional argument, plaintiff cites to the Supreme Court's 2014 decision in Walden v. Fiore, 134 S.Ct. 115 (2014). In Walden, the Court noted that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 134 S. Ct. at 1123. The Walden Court found that a "forum state's exercise of jurisdiction over an out-of-state intentional tortfeasor must be

based on intentional conduct by the defendant that creates the necessary contacts with the forum." Id. For relevance to the jurisdictional analysis, courts inquire whether a "defendant's conduct connects him to the forum in a meaningful way" and "an injury resulting from allegedly tortious conduct is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state." Id. at 1119.

In the Complaint, plaintiff asserts intentional torts and alleges that defendant submitted false affidavits to courts in North Carolina. His jurisdictional claim is predicated on the "effects" of the intentional torts being not just aimed at him, but being felt in the forum state of North Carolina. Pl. Resp. (#9) at 6. In particular, plaintiff argues that defendant Stein's actions were "directed to the forum state in a specific jurisdictional manner and were intended to prevent Plaintiff Jacobs from obtaining the amounts due under the Employment Agreement and Supplement." Id. at 7.

In the wake of the Walden decision, this district saw a remarkably similar case, Bank of America v. Corporex Companies, LLC. In that case, it was argued that specific jurisdiction existed "due to the fact that the effects of Defendants' tortious conduct were felt in North Carolina because that is where the headquarters" was located. Bank of Am., N.A. v. Corporex Companies, LLC, No. 3:13-CV-691-RJC, 2014 WL 3731778, at *2 (W.D.N.C. July 28, 2014). This court's colleague rejected that jurisdictional argument and reasoned that "[d]ue process requires sufficient minimum contacts between a defendant and a forum state, not merely between a defendant and a plaintiff." Id. at *5. The court

found that the fact that an injury from an intentional tort was felt in a given state was "significant," but "not immediately dispositive." Id. at *4.

The court adopts the reasoning of its colleague in Bank of America as to the plaintiff's argument regarding the general "effects" of an alleged intentional tort. While so doing, the court also acknowledges an obligation to resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakke, supra. Here, plaintiff avers that defendant filed two false affidavits in furtherance of the alleged tort in state court. Pl. Resp. (#9) at 7; Complaint ¶¶ 20-21, 32-34. As such actions simply being felt in the forum state is not conclusive, the court must determine whether these specific actions provide a sufficient basis to exercise specific jurisdiction.

Accordingly, the court will look to the three-pronged specific jurisdiction test for guidance, asking whether (1) the defendant purposefully directed hiss activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair.

**B. Fourth Circuit's Jurisdictional Test & Corporate Officer Liability**

In plaintiff's set of facts, this is not a case where a corporation's lawyer merely signed an affidavit on behalf of his employer and is being dragged unwittingly into a foreign jurisdiction. Such a scenario would clearly run afoul of Walden's insistence on "intentional conduct" by the alleged tortfeasor. Instead, as was made clear at the hearing,

this in-house counsel was a substantial owner of that company and is alleged to have taken direct action relevant to the alleged plan to defraud the plaintiff. At the hearing, plaintiff's attorney noted that defendant Stein told another officer of the company that there was "no intention" of ever paying the plaintiff the money owed under the Employment Agreement. See Hahn Declaration (#9-1) at 3. Even so, "North Carolina courts have recognized that officers and directors can be held personally liable for torts committed by them in their official capacities on behalf of the corporation and that personal jurisdiction does exist in connection to resulting claims." Tasz, Inc. v. Indus. Thermo Polymers, Ltd., 80 F. Supp. 3d 671, 689 (W.D.N.C. 2015) (citations omitted). Clearly, this conduct satisfies Walden's requirement as it is clearly intentional conduct.

The court notes that, by filling an affidavit, the lawyer goes from advocate/representative to witness, and that the act of being a witness is not without jurisdictional consequence. Further, the filing of allegedly false affidavit is not a novel basis for finding jurisdiction, as similar activities have led to the exercise of personal jurisdiction in sister jurisdictions. See Ohio ex rel. De Wine v. GMAC Mortg. LLC, No. 10 CV 2537, 2011 WL 1884543, at *2 (N.D.Ohio May 18, 2011) (holding that the filing of an allegedly false affidavit meet the standard for exercise of personal jurisdiction under Ohio's long-arm statute in a foreclosure action). Other federal courts have found the exercise of personal jurisdiction valid when employees and agents of companies execute an affidavit that they know will be filed and relied upon and know may affect the outcome

of that action, and particularly so in the foreclosure domain. See Walter v. Wells Fargo Bank, NA, No. 2:11-CV-912, 2012 WL 641949, at *3 (S.D. Ohio Feb. 28, 2012); Ohio, ex rel. DeWine v. GMAC Mortg. LLC, No. 10 CV 2537, 2011 WL 1884543, at *3 (N.D. Ohio May 18, 2011).

The Fourth Circuit has articulated a jurisdictional rule related specifically to tort allegations against non-resident corporate officers:

> [W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which [suit] service is made upon him [outside] the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process. On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

Columbia Briargate Co. v. First Nat. Bank in Dallas, 713 F.2d 1052, 1064-65 (4th Cir. 1983); see also Rich Food Servs., Inc. v. Rich Plan Corp., No. 5:99-CV-677-BR, 2001 WL 36210598, at *4 (E.D.N.C. May 12, 2001). In Columbia Briargate, the panel was convinced that it was "obvious" that the forum court had jurisdiction as the corporate officer "committed the alleged tort within the forum state and it is unimportant in those circumstances whether he was acting at the time in his corporate or personal role." 713 F.2d at 1065.

Under the rule of Columbia Briargate, the court asks whether the alleged tort occurred in the forum state. Based on the allegations of the Complaint, the court finds that if the tort occurred, it occurred in North Carolina. Plaintiff has alleged that defendant, as a corporate officer of RFC, negotiated an employment contract with this North Carolina resident then perpetrated a purported fraud by having no intention of ever paying him under the contract. See Hahn Declaration (#9-1) at 2-3. In plaintiff's facts, two affidavits were filed by the defendant, in separate cases, which both ended up in North Carolina courts as part of the alleged fraud.

The court applies the reasoning of Columbia Briargate to the three-pronged specific jurisdiction test and the facts of the instant matter. The court finds that (1) the defendant purposefully directed his activities at *this* resident of the forum state, the plaintiff; (2) the plaintiff's claim arises out of or relates to the defendant's activities with the forum state, particularly the affidavits filed and the alleged interference with plaintiff's ability to be paid under the Employment Agreement; and (3) assertion of personal jurisdiction is reasonable and fair.

### C. "Alter Ego" Theory

As a separate and independent basis for personal jurisdiction, the court will, *sua sponte,* analyze this case under the "alter ego" theory of personal jurisdiction. Without expressly arguing this theory, the plaintiff has pled numerous contentions related to an "alter ego" jurisdictional analysis. These include the fact that defendant was an agent, officer, and significant shareholder of RFC, and he directed its activities related to the

alleged tortious conduct. Plaintiff further alleges that the defendant transitioned to another loan company, PMAC Lending Services, and served as that company's General Counsel, and RFC was "stripping" its "corporation of assets and key employees" as to shield them from existing debts, like that owed to Mr. Jacobs. Jacobs Affidavit (#10) at 2-3.

As the Fourth Circuit has noted, "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual ... that would not ordinarily be subject to personal jurisdiction in that court when the individual ... is an alter ego ... of a corporation that would be subject to personal jurisdiction in that court." Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433 (4th Cir. 2011) (citing Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 n. 18 (5th Cir.2002)).[1] In North Carolina, jurisdiction cannot be based solely on one's employment status as an officer, agent, or employee of a company. See Robbins v. Ingham, 179 N.C.App. 764, 771, (2006); see also Saft America, Inc. v. Plainview Batteries, Inc.., 189 N.C.App. 579, 599 (2008), rev'd in part, 363 N.C. 5, 673 S.E.2d 864 (2009) (personal jurisdiction *cannot* be based solely on a defendant's employment status as the agent or officer of a company with ties to North Carolina, or on personal connections to North Carolina that fall short of the

---

[1] The court notes that in one New Mexico case, a federal court analyzed the allegations that a corporate officer had misused "the legal process by filing false and misleading information to the state court in order to accomplish an illegitimate end" under an "alter ego" theory. Albuquerque Facility, LLC v. Danielson, 181 F. Supp. 3d 924, 932 (D.N.M. 2016). Applying Tenth Circuit precedent and that state's law, that court eventually found the "alter ego" theory inapplicable. This court is, however, constrained to apply North Carolina law, as discussed *infra*.

requisite "minimum contacts.") (emphasis in original). In North Carolina, the "alter ego" theory would "ordinarily allow a court to exercise jurisdiction over a party not otherwise subject to personal jurisdiction when that party is an alter ego of a corporation that is subject to personal jurisdiction in the court." Hutton v. Hydra-Tech, Inc., No. 1:14-CV-888, 2016 WL 5724813, at *8 (M.D.N.C. Sept. 30, 2016). It is undisputed that RFC is (or was) subject to personal jurisdiction in this court, as it has been previously party to a lawsuit in this district. See Residential Finance Corporation v. Daniel Jacobs et al., No. 3:14-cv-201-FDW-DCK. The question for the court, on this separate and independent "alter ego" basis, is whether Mr. Stein could be liable for the company's actions as RFC's alter ego.

North Carolina courts allow "alter ego" jurisdiction based on piercing the corporate veil in order to "impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation." Green v. Freeman, 367 N.C. 136, 145 (2013). The burden is on the moving party to demonstrate that "that the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State. Id. Three elements guide the inquiry:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Id. at 145-46. The Green court also fashioned numerous factors to further guide future court's inquiries, including "inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records." Id. at 145.

In this case, plaintiff has averred that the defendant is not only a corporate officer but also a significant shareholder of RFC. He has further alleged fraud with particularity and sufficiently pled that the defendant's action was the source of the purported injury. It is the plaintiff-employee's allegation that his employer, RFC, and particularly its substantial shareholder and officer, Mr. Stein, defrauded him and tortuously interfered with his ability to be paid under the employment contract and did so, at least in part, through the act of filing what he characterizes as a false affidavit in a North Carolina forum where the employee sought to redress his grievance.

That being said, plaintiff has not sufficiently pled the first prong of the <u>Green</u> "alter ego" analysis, as to demonstrate that defendant so effectively "dominated" the company that veil piercing would be appropriate. Accordingly, as pled, the court cannot find sufficient basis to warrant the piercing of the corporate veil.

## IV. Conclusion

The court is asked to revise and reconsider its earlier Order (#13) in this matter under Rule 59. It does so here after the benefit of additional briefs and a hearing. The prior Order is vacated in favor of the analysis above.

The court has considered the implication of its determination and the possibility that it will open up a Pandora's Box of perils for practitioners who represent clients in multiple jurisdictions. Such is not the case here. The plaintiff has made sufficient pleading as to demonstrate each of the three prongs in the applicable test for specific jurisdiction.

The court is also cognizant that its instant determination could potentially lead to abuse by litigants dissatisfied with results they obtain in other forums as fraud is simple to allege, but difficult to prove. To that end, while the court finds specific jurisdiction over *this* defendant, it does, however, reserve the right as gatekeeper to revisit this issue if (a) discovery reveals persuasive facts that contradict plaintiff's allegations and proffer or (b) if defendant can demonstrate further its burden under the prong three, the test for constitutional reasonableness.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) the instant Motion to Reconsider (#14) is **GRANTED**;

(2) the court's prior Order (#13) in this matter is **VACATED**; and

(3) defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#7) is **DENIED**, for the reasons stated above, and defendant is granted 14 days from issuance of this Order in which to file his Answer.

Signed: March 13, 2017

Max O. Cogburn Jr
United States District Judge